The two cases we have consolidated for argument this morning are 16-1782 and 16-1793, Gray v. Secretary of Veterans Affairs and Blue Water Navy Vietnam Vets v. Secretary of Affairs. Please proceed. Thank you. Good morning, Your Honors. I'm Michael Wildhover, representing Mr. Gray. And with me at council table is Shannon Brewer with the law firm of Hale and Ponton. The Secretary's revised definition of— Help me. I'm confused as to what I'm supposed to be doing here. Okay? Let's assume for the moment that this amendment to the manual is reviewable. But the problem that I see is there's no official explanation of why the changes to the manual were made the way they were, nor is it clear what the record is that we're supposed to be reviewing the manual on the basis of. Exactly. That seems to me to be a problem. I would agree, Your Honor, but you have review authority under 502. This is what the Secretary did. Well, we have review authority, but we don't know why—we have no official explanation of why the manual was amended the way it was, which makes it very difficult to review the manual amendment. I mean, maybe we can review it facially to see if it's facially arbitrary and capricious, but I don't see how we can really review the reasons why this was done the way it was because we have no official statement of the reasons. It would seem to me that that would be inherently a reason for the Court to find the procedure of the rule that they created arbitrary and capricious. This case can't be— Why shouldn't this be done by a rulemaker? I mean, the VA started rulemaking in 2008 and truncated it after Haas. The veterans petition for rulemaking, which was denied, you went to the wrong court to review it. I mean, why— In effect, there was a request for rulemaking. Wait, wait. Why isn't the proper approach here to seek a rulemaking, and if the VA turns it down to come to us for review of that action? What the VA did in this case can't be taken—can't be looked at out of context of the Veterans Court's decision in Gray v. McDonald. That was the whole reason this rulemaking was done. That case invalidated the Secretary's definition of inland waters and told them specifically in the holding that they were to go back and rewrite it. So in effect, that was the rulemaking—the direction for the rulemaking. And unlike a veteran— But there wasn't a rulemaking. I mean, not a formal notice-and-comment rulemaking. I mean, these are difficult—these are difficult issues. There's a lot of conflicting views here, a lot of material. I mean, usually those are resolved in a notice-and-comment rulemaking. But the Secretary didn't do that, Your Honor. I mean, isn't that your point? You want us to find this change to be invalid because they didn't go through the rulemaking? Exactly, Your Honor. I mean, the whole point was that the Court of Veterans' Appeals told them that they needed to go back and use their expertise and their fair and considered judgment to rewrite this rule consistent with the regulation. But you didn't ask for a formal notice-and-comment rule. I mean, you're not appealing from the denial of a rulemaking petition. Well, I don't see why that was necessary, Your Honor, with all due respect, if the Court of Appeals for Veterans' Claims told the VA to do it. I mean— Well, they didn't tell them to conduct a rulemaking. They suggested that they shouldn't look at this. They had no authority to order them to conduct a rulemaking, and I don't see that they did. The whole opinion in the Gray case was that the court threw out their rule, their definition of inland waters, and they, in effect, did order them to redo it. That's the holding in the case. It's a precedent opinion. The Secretary didn't appeal. Instead they—in the documentation of the rulemaking procedure that they engaged in, and they acknowledged that what they published was required by the court's holding in Gray. It just strikes me that this is the wrong way to go about it, because we need a definitive record as to what the facts are, and we need an explanation from the Veterans Administration as to why this has been crafted the way it is. Which is exactly the problem, Your Honor. That's why we brought this petition. Well, why don't you petition for rulemaking? I don't — honestly, Your Honor, I don't see the efficacy of that when the Court of Veterans' Appeals told them to do this, and then they did it. They could have chosen to comply with the APA, which we say they should have done. They didn't do that. They didn't put it in the Federal Register and give people an opportunity to comment on it. I can guarantee you if they had done that, there would be plenty of comments about it. That's the point. We can't make the agency do things that it doesn't want to do. Well, you can. You can petition for rulemaking, and if they turn you down, seek review in this Court. I don't know. I understand your point, Your Honor, but again, coming from the viewpoint of a veteran and trying to get his claim granted, and when you have this Court of Veterans' Appeals decision that clearly instructed the VA to do this in a certain way, and then they didn't do it and produced a rule that is binding on everyone, it seems to — Well, if we leave the right of opinion in the Veterans' Court that way, then the relief for noncompliance with the mandate, if that's your argument, belongs in the Veterans' Court and not with us, right? Well, this process is available. Congress made it available to veterans, and it's a faster process. Indeed, we're here before hopefully getting a ruling on this rule. But the status of Mr. Gray's case is that now it goes back to the RO who has to apply this new rule. Right. Well, no, actually, it went back to the Board of Veterans' Appeals, and the Board of Veterans' Appeals has been in denial, and we have appealed that to the Court of Appeals for veterans' claims. However, it's in the very early stages, and we will make this — and, in fact, I just remembered that case has been stayed pending the outcome of this case here, because this ruling about the legitimacy of the definition of inland waters would settle this case. And, in fact, the Secretary is moving to stay all similar cases, and that's another reason that — Are you saying other individual complaints that are proceeding? That are with the same factual pattern, that they were on ships that went into bays and harbors in Vietnam, and the Secretary is saying that that doesn't constitute service on inland waters. And though there are a number of those — Wait. So, but you said that they would stay — they were seeking to stay those cases, stay those cases — I'm aware of several cases where they moved the court to stay pending the outcome of this case here at the Federal Circuit, specifically this case, because it would be dispositive of all those cases. And that would be another reason to bring this 502 petition, because it's not just Mr. Gray. There are hundreds, thousands perhaps, of other similarly situated Vietnam veterans that are in the same situation. But how can we decide whether the amendment to the manual is arbitrary and capricious without knowing, having some formal decision by the VA explaining why it did what it did, which we don't have, right? Well, no, we do have that, Your Honor. It's in the — they produce documents as part of the — Where's the explanation? It's in the appendix. No, no, no. What document? All there is, is there's a fact sheet, but it doesn't explain what they're doing. I agree, exactly, and that's why they're — but that being said, they're still applying this rule. To them, it's a rule, and it binds all of their adjudicators. So is your view that based on what Judge Dyk is raising, the absence of that explanation just should mean you should win because it is arbitrary because they failed to explain it? Exactly, Your Honor. I would — that's a perfect explanation of what kind of remedy we think we should get. Do we even need to get to the arbitrary and capricious question if we conclude that they should have gone through the formal rulemaking process? Yes, Your Honor. You don't need to do that. That's one remedy. So there's two different options in terms of what you're requesting. Right. Correct. One is to say they should have gone through formal rulemaking, and so therefore this rule is invalid. The other option is to go all the way down to the road to say it's arbitrary and capricious because they didn't explain themselves. Exactly. And because they just drew a line. Right. Across the line. And in addition to that, then they also have to go back and do the notice and comment so that they get the right information on which to base their rule. Did you urge the agency to do that in connection with this manual amendment? I might not be the correct person to talk to about that. My colleague, Mr. Wells, who is representing the Blue Water Veterans, he may know more about that because his organization... Let's stick with your case for the moment. You say they should have held a rulemaking, but isn't it kind of unfair to say that they should have held a rulemaking if you didn't raise that issue and that contention before the VA in the course of this proceeding? The Veterans Court did that, Your Honor. And there was a separate request for rulemaking, was there not, in the case that went before the D.C. Circuit? Again, that's a Blue Water Organization issue, and Mr. Wells might be better... So they did request a rulemaking on what constitutes inland versus offshore? I'm not exactly sure what they sought in that piece of litigation, but... Whatever they sought there, that case is over with. Yes. Well, if they sought review in the wrong court, then the time has run to seek review of that petition for rulemaking now. I see my time is into my rebuttal. Morning, Your Honors. Here we go. Looks like 30 minutes here. No, it's not. There we go. It'll get to 15 minutes. Okay. Good morning, Your Honors. Commander John Wells for the Blue Water Navy Vietnam Veterans Association. Judge Dyke, to answer your question, initial question, there was a couple of issues why we filed a 502. First of all, in the Haas case, it specifically said the M21 was an interpretive manual and notice and comment rulemaking was not required. Secondly, as... Did you ask for notice and comment rulemaking in connection with the manual amendment? We did not. And, again, based somewhat on Haas, but the other issue is we had made a request for rulemaking, which you'll find in the supplemental appendix, or we had made a request on the VA, which they treated as a request for rulemaking. So that was in 2011? That's 2013, I believe, sir. Let me double check. And that led to the D.C. case. One of the reasons why we filed the D.C. case is because there was confusion in our mind, although perhaps not in the D.C. court's mind, as to whether or not this would even be a 502 case. I know the VA argued successfully that we could have pursued it under 502, and when this new regulation came out, that's why we decided to take the 502 approach. We have a separate request for rulemaking, which is pending. And, unfortunately, it's not part of the record because it's not part of this case. But a separate request for rulemaking as to two of the harbors, Dunn-Ong Harbor and Nottrong Harbor. Mr. Bruskin and I actually met with the Secretary on that just a couple of weeks ago, and that is pending. We don't know what they're going to do. Do you recall when you filed that request? I want to say it was sometime in 2016. I believe it was the summer of 2016. I'm trying to remember. In Haas, was the similar argument, was this disputed? You're right. I mean, the Haas opinion says, no, we don't want to notice and comment rulemaking. This is an interpretive rule, right? Yes, ma'am. And you were disputing that. That was part of the issue, the dispute that arose with respect to the Haas patent. Well, actually, I was not the lead counsel on Haas. I was NBLSP. We filed an amicus brief on factual issues dealing with the hydrological effects and the desalination process. My experience and how I got into this is I was an engineer on a number of those ships, and as a retired commander, I became kind of the technical expert on what the water does and what it does once it goes into the distilling plant. But that's the background of why we did what we did, is Haas had convinced us that we did not have to ask for notice and comment. In fact, our separate rulemaking request is just on the two harbors for that sole purpose because we have a different set of evidence concentrated on just those two harbors that we don't have on the others. Wouldn't it be better off if we had a notice and comment rulemaking in which you could put in your evidence and we could get an actual official explanation as to why they're doing what they're doing? I agree, Your Honor. But that would make—you would have to do some sort of a departure from Haas to do that, or at least that would be our interpretation, is you would have to depart from Haas. I was pretty shocked to see the government's arguments in the D.C. Circuit because they appear to be directly at odds with what they're arguing here. We noticed that, Your Honor. So the government argues that what you should have done is come to us under 502, and now they're saying that you can't come to us under 502. And they said that these substantive manual changes actually fall within the bounds of our jurisdiction under 502, right? Yes, ma'am. We used to call that case 22 with a vengeance. Right. So I was trying to figure out, does that mean that they're somehow judicially stopped from making the alternative argument here? But I can't tell what the basis for the D.C. judgment was. I can't tell whether the D.C. court actually relied upon that argument that the government made for purposes of its ultimate ruling. I think that was in their final opinion. It was either in the district court or the public court. I'm sorry. It's been a while. But that was kind of the secondary reasoning is that we had the 502 option. The primary reasoning was that the Veterans Judicial Reform Act actually blocked us from going into the federal district court, that we had to come to you. Now, that was obviously pre-monk, where the aspect of a class action suit could be brought in the Court of Appeals of Veterans Claims. And that wasn't on anybody's radar at that time. But even if that's ultimately available, that's something that's way down the road. Yes, ma'am. So the government keeps finding ways to kick this issue down the road, even though they're continuing to apply this new policy. Well, you're exactly right. And the problem that we have is we have about 90,000 Blue Water Navy veterans that we've not been able to get coverage of. We started at 174,000. We've done a bit. Right. All of them are getting older by the day. Some are getting older, some are dying. And it's become a significant issue. We have bills in Congress with wide bipartisan support that have been basically stymied because of the cost issues under the Pay As You Go Act. And what I understand and I appreciate, there's some confusion on, at least in my head, on what the right place to file and how we file it. As we continue to go with this, these folks are dying every day. And we're trying to push it where we can. Like I say, Mr. Bruskin and I have met with the Secretary. We're pushing it in Congress. And we're pushing it in the Court. I've got another one coming up through the Court of Appeals for Veterans Claims. But Judge O'Malley, we've got to do something for these veterans. And if you want to make a decision against us, certainly we would respect that. But at least we'd have a decision for them. Right. But we can be sympathetic all we want. But we can't make a decision that's inconsistent with the law. I understand. Just because it's better policy. I might suggest to your honors that as we look at this rule as it came out, and there was a fact sheet with it. Again, that's in the supplemental appendix. I think even on the face of the rule, you can say it's not in consonance with the original Code of Federal Regulations or the Office of General Counsel's opinion came out. Because notably in those opinions, they indicated that a veteran had to be covered if they were within the boundaries of the nation of Vietnam. And as you look at these harbors, and the harbors is a completely different set of hydrological dynamics than it was in Haas. If you look at these harbors, and you've got the posts over there, but even on page 51 of your appendix, you've got an area that's surrounded by three sides, by land. There's no question that Vietnam exercised sovereignty over those harbors up until the time that the Republic fell. They are, by definition, by treaties, which we've signed and ratified, natural basin harbors. And, you know, it seems to me to be a different argument. What you're really saying is that the drinking water on these ships was contaminated by dioxin. It was. And as a result of that, the VA ought to recognize that the presumption applies there. But the difficulty, I've got to find something to review. And do you view Haas as telling the government they don't have to conduct a rulemaking? I don't read Haas that way. It seems to me what Haas says is that this provision of the manual is not invalid for failure to have a rulemaking, but it's not saying that if they were presented with a rulemaking petition, that they wouldn't be compelled to do that. I don't read Haas as saying that they cannot respond to rulemaking petition. I read Haas as saying that, you know, absent such a petition, they don't have to do it on a sui sponte basis, very much like, and actually, if you remember, in April of 2018, or 2006, 2008, they did come out with a proposed rule. They never made it a final rule because Haas basically said you don't have to follow 553. Because they said Haas solves the problem. That's right. But that's why, again, if you're looking for something to tie your hat to on the, or tie a line to, on the law, you know, if you look just at the interpretation of the General Counsel, of the Code of Federal Regulations, which talks about the veteran being within the land border. I mean, I agree with you. We're making different alternative arguments. But on this one issue, these ships and these harbors were within the natural boundaries of Vietnam. I don't think there's anybody in the world that can say that Da Nang Harbor was not subject to sovereign, Vietnamese sovereignty any more than we can say the Chesapeake Bay was not subject to United States sovereignty. And if you look just at those faces. I don't think that's your best argument. I don't think that's your best argument. I'm trying to answer your question. Okay. My best argument is. You have to go all the way back to what is it that you're asking that we interpret, or that the VA is interpreting. And they're interpreting the language in the statute that says the Republic of Vietnam. Right. And in Haas, the Haas court said, okay, well, perhaps Congress was legislating against the backdrop of what sovereignty was recognized. But perhaps it was also legislating against the backdrop of an already existing regulation that differentiated between offshore waters and Vietnam. I understand that. But harbors are not offshore waters. And that's where the arbitrary and capriciousness of it comes in. In what was reasonable in Haas, or arguably reasonable in Haas, as to the effects in offshore waters is unreasonable in the harbors, which are big mixing bowls with Agent Orange coming out through the rivers and constantly being churned up from a shallow water harbor by the maritime traffic, the boats, the anchoring evolutions, the shooting of the guns, and things of that nature. Not to mention the fact that in Da Nang Harbor, at least, they were getting contaminated water from a place called Monkey Mountain that was brought up to the ship. But you didn't just argue that drinking water was impacted. That's correct. You argued that there was actually dioxin on the deck of the ships. We said that there was dioxin on the deck of the ships due to wind drift. But the primary was through the drinking water. And, you know, they would bring in the distillation system. They used it for boiler feed water and for potable water. Even if they didn't make potable water in the harbor, it certainly contaminated the entire system. And I'm running way into my rebuttal time. Thank you. May it please the Court. I'd like to start with Judge Dyke's questions about what is reviewable here and whether or not this is the proper venue for hearing this. And the government agrees that the reason why administrative staff manuals are excluded from 502 review as a practical matter is that there is no formal explanation set forth in a Federal Register notice for this court to review, which results in an appendix that cobbles together the decisional documents and fact sheets and other documents of the nature that does set forth the VA's position. But we agree it's not a formalized position as would be in the Federal Register. Well, how do you deal with what you said to the D.C. Circuit? I mean, it's pretty shockingly different than what you said here. And I admit that it didn't come up until the reply brief, so you haven't had a chance to respond. But, I mean, those arguments were pretty on point and said this should be a 502 question. Respectfully, we disagree with that sort of definitive point. The argument made in the District Court in the D.C. Circuit was that under 511, the District Court did not have jurisdiction. And what the government said was to the extent that this policy is reviewable, and the court recognized it wasn't- That's not what you said. You said it's clearly, and you said because it's been published in the Federal Register and we've got all of this information out there, they should be going to the Federal Circuit under 502. To challenge the policy that was upheld in Haas, but what they did not specifically challenge was the Administrative Staff Manual in this case. And so in the District Court case, they were not arguing about whether or not an Administrative Staff Manual, the M21, was reviewable by the District Court. So the government didn't go in and say, well, you're challenging the same thing as you're challenging in the Federal Circuit. That should be in the Federal Circuit. All it said was to the extent. And the District Court said it's unclear what they're challenging here. They seem to just be challenging the policy that was at issue in Haas. And it cites a number of documents that set forth that policy and said it's not clear what exactly is being challenged. They said to the extent that there is any jurisdiction, 511 divests the District Court. And so if there is jurisdiction to review this policy, it's in the Federal Circuit. And we don't disagree that there are proper ways that this Court could review the M21. In fact, they have. But the problem with the whole M21 thing is you don't have an explanation from the VA as to why it did what it did, nor do we know what the real record is on which we should be reaching a judgment. The petitioners appear to agree that the best way to do this is by notice and comment rulemaking. Is the government resisting that? I mean, why not have a notice and comment rulemaking to resolve these things? The VA's position is that there was notice and comment rulemaking when it set forth its interpretation of 1116 in the regulation, and that when it is providing instructions The regulation that was originally adopted years ago doesn't tell us very much. It doesn't really address the issues that we're concerned with now, particularly the drinking water thing. That wasn't considered at that time. There's a significant issue that's been raised here. What's going to happen? What's going to happen with the current rulemaking petition? When are we going to get a decision about that? I'm not aware of exactly when that petition is going to come out, but that petition will have with it a full, reviewable decision by the agency, which is what we suggested would have been appropriate in this case because of the effect that the agency's decision to publish this in the manual. The manual here, at issue here, did not change the policy. It simply clarified its instructions to the adjudicators in Haas. Well, it did change the policy. Come on. Before, there were specific bays and harbors that were included in the policy, that if they were in those waters, then they were covered. Now, after the Veterans Court said, you need to actually have some basis for drawing these lines, you then said, okay, we're going to draw a line and exclude all those bays and harbors that used to be covered, and we're going to draw a line across water. That is a change in policy, is it not? Well, I would suggest it's not. I would suggest that the Haas court found the policy is the foot-on-land policy. The problem that resulted after Haas was that it was not, the instructions to the RO adjudicators was not clear enough, so that it did include two bays and harbors, but there was no explanation for why those were included. Well, how do the rivers constitute foot-on-land? Because the foot-on-land policy is tied, as the Haas court noted, the spraying of the Agent Orange with the dioxin was the appropriate proxy for the presumption, and the spraying took place over inland waters as well as over land. But there's still no foot-on-land if you're only on the waters. Right, but the interpretation of 1116 as including inland waters was upheld in Haas, and so that's the policy at issue. But we weren't, Haas is not clear, explicit, as to whether they referenced inland waters included the harbors or bays or not. Correct, it did not expressly discuss that, but what it does discuss... It was only talking about the deep water. It actually used the phrase deep water offshore. It did that because that's where Mr. Haas served. But the analysis... The court can only decide the facts before them if they're in an individual case, which is what Haas was. But the analysis that they were conducting was on the foot-on-land policy, and there's references in the Haas decision to waters adjoining the coastline, and the discussion of the over- and under-inclusiveness of the presumption discusses specifically someone who's stationed directly offshore, directly off the land, who they recognized may have... So you think that Haas resolved the question of inland waterways and whether or not bays and harbors are included? Yes, Your Honor. The policy is foot-on-land to include inland waterways. Yeah, but it didn't resolve the particular issues, the line drawing that's involved here, and whether that's arbitrary and capricious in light of the potential drinking water contamination and so on. Are those issues raised in the current petition for rulemaking? The current petition for rulemaking does raise those issues, I believe, with respect to two bays and harbors, but I think it's tied to the use of a reservoir near those bays. And so it's not a one-for-one, but certainly, as the Court noted in 2013, the military veterans advocates did file a petition for rulemaking and could have sought review of this policy with respect to bays and harbors. There's nothing in Haas that defines inland waterways. Not in the decision itself, no. But in the M21 at issue in that case, there was an indication of what the VA considered to be inland waters. It just wasn't clearly defined enough. But after Haas, you went out and included at least two bays or harbors in terms of being available. So I don't understand what you're telling us. I mean, you're telling us that as of Haas and based on what Haas said, that included the rule now that we're talking about, the manual now, that it ends at the line? If that were the case, then why were you covering the bays and harbors after Haas? Well, that's why the M21 instructions were tossed, because there was not a good reason for including those two bays, because the line upheld in Haas was the geographic land border of Vietnam because that's where spray missions started. I mean, that's really the basis for the decision in Haas. And so the VA recognized that's why they didn't appeal the Gray decision, because there was not a reasoned basis for having included those two bays that related to the likelihood of exposure. But drawing a line across water is a reasoned basis? There is. As the record demonstrates, although not in a formal way, the VA has reviewed all of the military history and the scientific history and the medical history with respect to— I don't want to consider that. That strikes me as ridiculous. You have no formal decision for us to review. And, you know, you say, oh, well, they've reviewed this. That sounds like a description of the internal processes of the agency. We can't review that. Right, Your Honor, and that's why actions under 552A2C in administrative staff manuals are not within this court's 502 jurisdiction. Here's the problem. You're saying that if it's a manual, you can do anything you want, and it's completely non-reviewable. But how do you deal with all the case law that says the first inquiry is whether what's in the manual is really a substantive versus an interpretive analysis? Are you saying we should throw out all that case law? No, Your Honor, but the fact is that the Haas court found the M21 provisions at issue here. They've been amended, but the original, to be interpretive. And under the 2015 Supreme Court in Paris, the court said, even if an agency completely changes its interpretation of a regulation, if it was an interpretive rule to begin with, it is an interpretive rule unless the agency decides to publish it under notice and comment. And so here, where there is not a complete reversal of the position, Paris counsels that this is an interpretive rule, not a substantive rule. And the fact that it was published in the administrative staff manual is a choice the agency is entitled to make. It has certain effects. The effect on this court's jurisdiction is it divests it from direct review on 502. That's not to say that it cannot, this court can't review it if a petition for rulemaking is filed and denied, or that it can't review it in the context of a benefits appeal like Haas. And I would assume, like Gray's case, if he were to lose at the Veterans Court. And that's so we have basically another couple years before we can get to that. It's possible. There are two cases pending right now that would, I believe, challenge the M21 provisions. Are those the ones that the government has tried to stay? No, those are before this court right now, so they're not staying. And what cases are those? They're Procopio, which my colleague, Mr. Wells, is. There's an en banc petition. There's an en banc petition on Haas, and there's another one, Taina, I believe, are the two cases, T-A-I-N-A, that Mr. Carpenter's. Say it again. Taina, I believe. Say it again. T-A-I-N-A. How did those cases arise? They're appeals from decisions from the Veterans Court. Individuals. Individuals, benefit appeals. And so just like in Haas, where the M21 provisions were reviewed by this court, they can be reviewed when they're applied to veterans' claims, and those claims arise to this court. And the benefit of doing it that way, either a petition for rulemaking where you will have a reasoned formal decision by the agency, or in a benefit stream appeal is that there will be lower court decisions and positions from the agency that can be easily reviewed by this court, and the court won't have to take on a record where there has been no formal process, and there are things like fact sheets to the public. Well, do those individual cases necessarily, do the record in those cases include all of the studies upon which the Veterans Administration has relied in coming up with this procedure? I don't know. I mean, the cases are fairly early, but I would expect that they wouldn't have entirely all of the evidence. Yes, but a petition for rulemaking in theory would require citation to the specific evidence. To be fair to the VA in this instance, they did go back and review the evidence from the IOM that is directly related to the issues here. So it's not like they simply decided to draw a line and called it a day. They went through the evidence, they spoke to experts in the VHA, and they asked them to advise on this evidence. I think there's a fair debate as to how much they really went through the science or the evidence, but that's a different issue. Let me go back to your interpretation of Haas, because I thought that the manual provision that Haas was talking about, separate from the regulation, the manual provision, had to do with the Vietnam Service Medal. And in that case, they said that manual provision was interpreted. And that's the manual provision that was at issue with Haas, not a manual provision that drew lines with respect to inland and waterways. Well, I mean, the receipt of the Vietnam Service Medal was the way in which VA was instructing its adjudicators on how to determine— It's a lot easier to call something like that interpretive, because there's nothing in the statute that talks about receiving a Vietnam Service Medal. That was something that was just a practice that the VA used as a shortcut. Right, but the characteristic of the provision that rendered it interpretive was not what it said specifically, it was what it was doing. It was providing an interpretation of the agency's rule, as set forth in the regulation. You're saying every time the agency decides what comes within the bounds of a regulation or a statutory provision, that every time they decide what comes within the bounds of that, that's purely interpretive? It is interpretive, yes, under this Court's case law in Guerra and the Supreme Court's decision in Perez and Guernsey. The question is, where do they publish it? If they choose to publish it in the Federal Register, then it is reviewable, because it would be under 552A1. So it would be within this Court's 502 jurisdiction. But where they choose to put it in an administrative staff manual, it is not. No, no, no, that can't be the test. I mean, if you fail to publish it, it's still reviewable if you should have published it in the Federal Register. And does the government agree that the manual amendments here are binding on the adjudicators? They're binding on the adjudicators. Okay, well, that's different from what the Court in Haas said, where it said that this was not binding, it just provided guidance. Well, I mean, it's not binding on the Board, but it is binding on the adjudicators. And I don't recall the government taking a different position in Haas. Well, I don't know that the government took a different position, but what the Court said is that it simply provided guidance on how to adjudicate the cases. It did not define the boundaries of the DBA's legal responsibility with precision. So it seemed to rest in part on the notion that the manual wasn't binding on the adjudicators, whereas now you agree that it is. I'm not sure I read that section you just read as saying it's not binding on the adjudicators. It's simply not a formal statement of the agency's position as would be something published in the Federal Register. So you're saying the agency gets to decide what's reviewable by this Court by they can make the most dramatic change in the world, but as long as they don't bother to tell the public in the Federal Register, then it's not reviewable. Not necessarily. There could be. I'm not saying that simply put it. Well, I think you could go that far. I mean, that's right. The reading of 502, which is very specific to actions referred to in 552A1, renders actions under 552A2C not reviewable by this Court. Now, publishing something in an administrative staff manual has impacts on the agency. It does not have the force and effect of law. Because it has the impacts on everyone that comes before the agency. Right, but just because it has a substantial impact does not render it substantive. The Court in Perez, the agency decision there completely reversed a prior interpretation, and the Court said even though there's a significant change, if it was done through an interpretive rule, it does not render it substantive simply because it has a significant impact. Moreover, the language of 552A2C is administrative staff manuals and instructions of staff that affect a member of the public. So if the effect of an action that's in an administrative staff manual could render it substantive, then there would be no agency actions in the M21 essentially that would fall under 552A2C, rendering it essentially superfluous with respect to the Veterans Court. But that's not the appropriate way to read this. The agency accepts... Why is the agency trying so hard to be so stingy with respect to this presumption that Congress clearly thought was important for these veterans? It's not that the agency is being stingy. It's that a veteran needs to demonstrate entitlement to disability benefits. But the whole point of the presumption is that they can't. Right, but the interpretation by the VA of the Agent Orange Act is that where there has been demonstrated evidence of spraying as a proxy for exposure, the agency, as directed by Congress, will make it easier, will provide a way to prove exposure for those veterans. But the idea that all veterans are entitled to this presumption and it's the agency's burden to pull it back from a certain is not... Does payment for this come out of the general appropriations to the Veterans Administration? You mean if they were to change the policy? Payment to veterans who make claims under Agent Orange. I believe so, yes, Your Honor. Unless the court has further questions about the merits or any of the other issues, we'd respectfully ask this court to dismiss these petitions. Let me do ask you one question about arbitrary and capricious. Assuming we get to it. I really have a hard time with the notion that drawing a line across the mouth of a river where the water on this side of the line has all covered veterans and the water on this side of the line does not. How is that not arbitrary by definition? The court in Haas recognized that presumptions are necessarily under- and over-inclusive. The whole point of a presumption is you can't tell with granularity who was exposed and who was not. So lines always appear to be... But at Haas it was much easier to say that because the line that was being drawn there was much different. We're talking about way offshore versus a line here between a river and a harbor. So they're not talking about this much difference between where the water is. Again, I would disagree that the court in Haas was thinking the line was miles offshore. But again, the description of the potential over- and under-inclusiveness in Haas was referring to someone in a boat directly off the coast for a long period of time versus someone who simply steps foot in Vietnam for five minutes and then leaves. And the court recognized that person who stepped foot would be entitled to the presumption and the person offshore would not. And I think they understood that there would be claims from people saying, look, I spent time right off the coast and so shouldn't I be entitled to the presumption? But again, what's the coast? That's the problem. Haas didn't say what the coast was. The assumption there was that Vietnam was definable. And geographically, it's hard to say that these bays and harbors are not part of Vietnam. Well, I mean, using spraying as a proxy, which is what the VA did and what was upheld as the basis for the policy in Haas, the VA has repeatedly pointed out that the spray missions took place over land. So they did not start spraying over harbors. The Agent Orange is a defoliant, right? So it's only used where there are trees. And again, I would disagree that Haas did not recognize the fact that this line was being drawn along the geographic land border of the coastline. I mean, the reference in Haas repeatedly to boots on the ground, foot on the ground, is stepping foot in Vietnam. And so we would argue that what the VA did following Gray was recognize, okay, in Haas, this is the line that was affirmed and is reflected in the policy at issue in Haas. And the question then is, is there a basis for drawing this line somewhere else to include some other area because there is a comparable likelihood of exposure? And on review of the medical and scientific evidence, the VA concluded that it is not. And I would just remind the Court that the standard of review here is quite narrow. It's just whether or not there is a rational connection between the facts found and the choice made. And so even if this Court would look at some of the evidence and find that it doesn't meet the preponderance of the evidence test or they believe that the policy should be different... What happens if there's no record? You're asking us to make a judgment on something which really isn't before us in any formal way. I don't see how we can say that the VA was... Even assuming that the manual is reviewable, I don't see what the basis is for making a decision one way or the other as to whether what the VA did was rational. And nor did Haas decide the drinking water question, correct? Haas did not address drinking water. Well, it did address it. It didn't decide it.  Okay. No, I agree, Your Honor. That's why we argue first and foremost that this case should be dismissed so that this issue can reach the Court in the proper manner with a more fulsome record to demonstrate exactly the VA's reasoning. But that could have happened if you all had just done rulemaking instead of doing this in the manual. Right, but the agency is not obligated to do this via rulemaking. Because it did it via an interpretive rule in the agency manual the first time around, it was not obligated to do this in the Federal Register. It could have chosen to do so. But in the interest of getting this done quickly and making sure that the adjudicators had the updated policy, they chose to do it this way. And it has practical effects on the agency, as I noted. But that does not divest this Court from jurisdiction to review a properly raised petition for review of these provisions. Thank you, Your Honor. Thank you. I would posit that the Secretary is obligated to do a rulemaking for provisions that's in the M21-1 if it's a substantive rule. And that's exactly what this was. What they did, and it's also... The problem I'm having is you didn't argue to the VA in this proceeding that they were obligated to conduct a notice and comment rulemaking. And my memory of your brief is not all that clear. But I don't... Correct me if I'm wrong. I don't recall that you argued that we should reverse here because there was a failure to hold a notice and comment rulemaking. We did, Your Honor. It was our second section to the brief. We did say that they violated the Administrative Procedures Act by failing to publish notice and comment. What page is that on? 26. What? 26. 26 of Mr. Gray's brief. Right. So you argued in the alternative that either they had to engage in rulemaking or it was arbitrary and capricious. Yes, Your Honor. And we made that argument in the reply brief even more clear based on the government's argument about that. And I also would like to point out that it isn't just boots on the ground. That's not the rule that the VA has adopted when it interpreted the regulation. Inland waters are included. They interpreted the regulation to include inland waters. Inland waters doesn't require anybody on those waters to step foot on the ground. What Haas said about the regulation was that presence equals exposure, not spraying equals exposure. Spraying hit the ground, hit trees. It was washed into rivers from the rain and floods, and that's how it contaminated the rivers. And that's why the VA a long time ago said that a veteran serving on the inland waters was included in the definition of somebody that was in Vietnam. And the government just referenced the Institute of Medicine studies. In the record at 232, the Institute of Medicine said that estuarine waters were contaminated because of what the Navy's river forces did to spray the banks of the rivers. It doesn't mean that they stepped foot on the river bank. It just means that the contamination was in the water. Well, by definition, scientific definition, geographic terms, whatever you want to call it, bays and harbors are estuarine waters. It's where, by definition, that's where saltwater and freshwater meet and mix it up. Those are parts of the estuarine waters, and the Institute of Medicine has said at 232 that those types of areas were contaminated. I see my time is about up. If there's anything else, thank you. Your Honors, forgive my poor memory. Appendix 157 is our letter to the General Counsel in July of 2015 on this issue, asking that they actually determine the boundaries based on the 1958 Convention on the Territorial Seas and the Contiguous Zone. That is where we draw the line, and I think that would constitute a request for rulemaking. It didn't say specifically request for rulemaking, but it certainly did ask for a rule. Judge O'Malley, I noted your questions on the arbitrary and capriciousness, and, yes, the agency is stingy. That seems to be the problem. They've overestimated, and Chief Judge Prost, it does come out of appropriations. If the government or the Secretary designates this as mandatory spending, otherwise it has to go through the CBO. If it's a congressional act and it's subject to an offset of other veterans' benefits under the Pay As You Go Act of 2010. That's if it was a separate statutory provision. Yes, ma'am. Okay. Judge O'Malley, you know, your question I think was well stated on where we draw the line because effectively the same molecule of water that is considered contaminated inside the mouth of the river, once it goes outside, is not. If you look at the Da Nang Harbor on, I believe it's Appendix 51, you'll see the river. If you stick the bow of the ship in the river, you get the presumption. If you're anchored right off the mouth of the river, you don't. I hope that was one of the issues that Gray had with this whole thing and why they found the Secretary's position irrational. What the government refuses to acknowledge but is before you in Appendix, starting at Appendix 57, is the fact that the Agent Orange was in Nha Trang Harbor 20 years after the war. The dioxin was found. They found it in the Cay River. They found it in transects coming out from the discharge plume of the Cay River, and they found it still in toxic levels 20 years after the war. The VA will tell you, gee, we don't know whether or not it was toxic enough, but in that report it shows the toxicity levels. It also shows lower levels where the rainwater wash off would have washed it off into the harbor.  The natural forces are the same. It was mixed with petroleum, JP4, to be precise, and was actually JP4. It was like all petroleum will float. It floats into the rivers. We sprayed the riverbanks. It's washed into the riverbanks. Rivers run out to sea. Once it gets into the harbor, some of it emulsifies, falls to the bottoms, and the maritime operations there, the maritime traffic, anchoring, cavitation of propellers, shooting the guns, small boats back and forth, constantly stir that up where it goes into the distillation suction, which is usually about anywhere from 8 to 10 feet below the waterline on a ship. That's how it got in there. If you look at the numbers of the figures in Nantrong Harbor, remember that, one, that's 20 years after the war and there's been some half-life deterioration, and, two, the enrichment factor of the distillation plants was found by the Australians, who, by the way, grant the benefits, and as confirmed by two separate committees of the Institute of Medicine, the last IOM committee found the enrichment factor was a factor of 10. Now, I understand you have some limited powers here, but, you know, as we've said, the sage advice of Marbury versus Madison, if you have a right, and I think that these folks have a right to the benefits, there has to be a remedy. We went to the district court first because we weren't sure, and, frankly, part of the reason we went to the district court was to find out, and, you know, it was a 50-50 proposition which one we tried first. We went to the district court. They said, go to the Federal Circuit. So we're coming to you and we're asking that you grant the remedy. I am over time. I apologize for that. One of the things on expertise is I probably have some naval expertise, being around for 22 years, and hydrological expertise. If you have any questions, I'd be happy to answer them. Thank you. Thank you, Your Honor.